UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SUSAN R. EATON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:07-CV-382 CAN |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On August 17, 2007, Plaintiff Susan Eaton (Eaton) filed her complaint in this Court. On December 7, 2007, Eaton filed her opening brief and asks this Court to enter judgment in her favor or to remand this matter to the Commissioner pursuant to Sentence Four (4) of 42 U.S.C. § 405(g). On January 18, 2008, Defendant Commissioner of Social Security, Michael J. Astrue (Commissioner) filed his response brief. On January 31, 2008, Eaton filed her reply brief. On the same day, Eaton filed a motion to remand pursuant to Sentence Six (6) of 42 U.S.C. § 405 (g). On March 7, 2008, Defendant filed his response brief to Eaton's Sentence 6 motion, and on March 18, 2008, Eaton filed her reply brief. The Court now enters the following ruling on all pending matters.

**I.     PROCEDURE**

On December 23, 2003, Eaton filed her application for Disability Insurance Benefits (DIB) (Tr. 9). Eaton is insured for DIB through December 31, 2008 (Tr. 43). Eaton claims she is entitled to benefits pursuant to Title II of the Social Security Act. See 42 U.S.C. §§ 416(I), 423.

On February 10, 2006, Eaton appeared at a hearing before an Administrative Law Judge

(ALJ), who issued a denial of Eaton's claim (Tr. 442-60).  On November 21, 2006, the ALJ found that Eaton is not disabled (Tr. 9-18).

The ALJ found that Eaton had not engaged in substantial gainful activity since November 8, 2003, and that her impairments of fibromyalgia, status post right shoulder torn ligament, status post right elbow tendonitis, and degenerative changes of the lumber spine were severe (Tr. 11). However, the ALJ found that Eaton did not have any impairments that met one of the impairments in 20 C.F.R. app.1, subpart P, § 404 (Id.).  The ALJ found that Eaton had the residual functional capacity (RFC) to perform light work that did not involve more than lifting twenty pounds occasionally and ten pounds more frequently, standing or walking for up to six hours at a time, sitting for about six to eight hours a day, and performing postural movements occasionally (Tr. 15-16).  The ALJ also found that although Eaton could not perform her past relevant work as she actually performed it, she could perform the job as it is generally performed in the national economy (Tr. 17).

Eaton appealed the ALJ's decision to the Appeals Council (Tr. 5).  The Appeals Council denied review, and as a result, the ALJ's decision became the Commissioner's final decision (Id.).  20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005).  Consequently, on August 17, 2007, Eaton filed a complaint in this Court seeking a review of the ALJ's decision.  This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**II.    ANALYSIS**

    A.    Facts

Eaton was a thirty-four year old female at the time the ALJ denied her claims (Tr. 48).

She has a ninth grade education and performed past work as a fast-food restaurant manager (Tr. 57, 62).

Eaton claims she suffers from fibromyalgia[1], right elbow tendonitis, right shoulder surgery, weakness, anxiety, and depression (Tr. 56).  In a typical day, she does a variety of household chores, including cooking, laundry, washing dishes, making the bed, and grocery shopping (Tr. 449).  Eaton testified that she can lift ten pounds, but that she cannot hold it for very long (Id.).  She enjoys watching television and cares for her own personal needs (Tr. 450). When she is at home, she generally sits in her recliner so she can sit up or lay back (Id.).  Eaton testified that she has panic attacks at home three or four times a week, and only leaves the house to go to the doctor or attend school functions with her children (Tr. 449).

Eaton saw a number of doctors, but her pain management specialist was Dr. Steven Posar (Dr. Posar).  On August 18, 2004, Dr. Posar indicated a diagnosis of general aching but noted that Eaton had very few if any gross tender points, and as a result, she did not meet the criteria for fibromyalgia, even though he did not rule out the diagnosis (Tr. 334).  On July 28, 2005, Dr. Posar opined that Eaton had multiple medical problems, and that she was not able to work at all at that time without reference to any medical condition (Tr. 371).  Eaton saw Dr. Posar on August 9, 2005 for tests, including MRI, that showed a cervical syrinx[2] and radiculitis[3] (Tr. 327-332).  In a letter March 19, 2007, four months after the ALJ's decision, Dr. Posar opined that

---

[1]Fibromyalgia is a common syndrome of chronic widespread soft tissue pain accompanied by weakness, fatigue, and sleep disturbances, the cause of which is unknown.  Stedman's Medical Dictionary 725 (28th ed. 2006).

[2]Syrinx is a pathologic tubular cavity in the brain or spinal cord with a gliotic lining.  Stedman's Medical Dictionary 1923.

[3]Radiculitis is a disorder of the spinal nerve roots.  Stedman's Medical Dictionary 1622.

3

Eaton was completely and permanently disabled (Tr. 441). Dr. Posar referred to the cervical syrinx and radiculitis documented on MRI and EMG in making this conclusion (Id.).

On January 29, 2004, Eaton went to John Heroldt, Ed.D. (Dr. Heroldt), for a psychological evaluation. (Tr. 201). Dr. Heroldt administered several tests, including recalling numbers and words, and performing simple calculations (Tr. 202, 203). After administering these tests, Dr. Heroldt described Eaton's memory as below average (Tr. 202).

On February 9, 2004, Dr. M. Zeitoun (Dr. Zeitoun) examined Eaton at the request of the Social Security Administration (Tr. 220-24). His findings included a decreased range of motion in the right shoulder, right elbow, and the lumbar spine, as well as a history of fibromyalgia (Tr. 222-23). He also noted that Eaton had a slow gait due to pain, an inability to squat, mild difficulty in walking heel to toe, mild tenderness in T2-T12, and deep tendon reflexes of 2/4 bilaterally (Tr.221-22). Based on Dr. Zeitoun's findings, State agency physicians completed a residual functional capacity (RFC) assessment on March 3, 2004, which was affirmed on May 28, 2004 (Tr. 225-32). The RFC showed that Eaton could lift twenty pounds occasionally and ten pounds frequently, sit for about six hours a day, and perform postural movements occasionally (Tr. 226-27).

Eaton argues that this case should be remanded pursuant to both Sentence 4 and Sentence 6 of 42 U.S.C. § 405(g). Consequently, this Court will first address whether a Sentence 6 remand is appropriate.

> B.     Eaton's Motion for Sentence Six Remand

A Sentence 6 remand may be ordered where new material evidence is adduced that was, for good cause, not presented before the agency. 42 U.S.C. § 405(g). Evidence is material if

there is a reasonable possibility that it would have changed the outcome of the ALJ's determination.  Sears v. Bowen, 840 F.2d 394, 400 (7th Cir. 1988).

When the ALJ issued his opinion, the record contained Dr. Posar's notes from Eaton's initial visit on August 28, 2004, his July 28, 2005, note stating that Eaton cannot work, and the results from MRI scans done in August 2005 (Tr. 327-334, 371). After the ALJ issued his opinion, On March 19, 2007, Dr. Posar wrote a letter referring to a cervical syrinx and radiculitis apparent in an unspecified MRI (Tr. 441).  He opined that Eaton is permanently and completely disabled (Id.).

Eaton argues that the letter from Dr. Posar dated March 19, 2007, is material because there was no way of knowing that the ALJ would misconstrue Dr. Posar's record evidence.  However, this Court finds that the letter is not material because it does not present any findings likely to affect the outcome of the ALJ's determination.  The ALJ initially determined that Dr. Posar's July 2005, opinion was inconsistent with other medical opinions, and that it was internally inconsistent because it was a conclusory statement.  Dr. Posar's March 2007, letter does not present new evidence and only relies on evidence in the record already presented to the ALJ.  It does not state any changes in Dr. Posar's opinion.  The letter does not even expand or add to Dr. Posar's opinion.  Thus, it is unlikely to affect the outcome of the ALJ's decision.  For these reasons, Dr. Posar's letter of March 19, 2007 is not material, and Eaton's motion to remand pursuant to Sentence 6 of 42 U.S.C. § 405(g) is **DENIED** [Doc. No. 19].

    C.    Standard of Review

However, even though remand is not appropriate under Sentence 6, this Court must address  Eaton's motion pursuant to Sentence 4.  The standard of review for an ALJ's decision is

whether it is supported by substantial evidence and free of legal error.  See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003).  Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972).  A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion.  Haynes, 416 F.3d at 626.  An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).  However, an ALJ's legal conclusions are reviewed *de novo*.  Haynes, 416 F.3d at 626.

> D.     Eaton's Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Eaton must establish that she is "disabled."  See 42 U.S.C. § 423(a)(1)(D).  The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled.  The ALJ must consider whether: 1) the claimant is presently employed; 2) the claimant has a severe impairment or combination of impairments, 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so

severe as to preclude substantial gainful activity, 4) the claimant's RFC leaves her unable to perform her past relevant work, and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352.  If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If there is an affirmative answer at either step three or step five, then there is a finding of disability.  Briscoe, 425 F.3d at 352.  At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner.  See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404.  However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five.  20 C.F.R. § 404.1520(e), (g).  The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five.  Id.

     The ALJ found that the claimant's RFC allowed her to perform other work that existed in significant numbers in the national economy at step five.  As a result, she was not disabled.  The issues this Court must resolve are: whether the ALJ wrongly concluded that she suffers many non-severe impairments, whether the ALJ failed to give controlling or substantial weight to Dr. Posar, one of her treating physicians, failed to consider her impairments in combination, whether the ALJ made an improper credibility finding, whether the ALJ incorrectly found that she can perform work that exists in society under step five.

          1.    <u>The ALJ's finding that some of Eaton's impairments are non-severe is</u>

<u>supported by substantial evidence.</u>

An ALJ must determine whether the applicant has a severe impairment or combination of impairments which significantly limit the applicant's physical or mental ability to work.  20 C.F.R. § 404.1520(c).  The ALJ must consider whether the combined effect of all the applicant's impairments is sufficient to disable her.  <u>Sims v. Barnhart</u>, 309 F.3d 424, 432.

Eaton contends that the ALJ failed to consider her problems with focus, memory, and concentration in combination with her other impairments in determining her disability.  However, the ALJ categorized several of Eaton's impairments as severe in his opinion, including fibromyalgia, shoulder impingement, elbow tendonitis, and degenerative changes to the lumbar spine (Tr. 11-13).  Some impairments which the ALJ specifically found to be non-severe were Eaton's problems with focus, concentration, memory, and anxiety (Tr. 13).  The ALJ relied on the progress notes from Dr. Gilbert, which refer once to infrequent panic attacks, and the report from the State agency physicians that stated Eaton's mental impairments would cause only mild limitations (<u>Id.</u>).  The ALJ also relied on the results of Dr. Heroldt's test to show that Eaton did not have severe psychological problems(<u>Id.</u>).  In step four, because Eaton's psychological problems were classified as non-severe, the ALJ did not need to take them into consideration when he determined that Eaton's impairments or combination of impairments were not sufficient to equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 because her problems with focus, memory and concentration were determined not to be severe (<u>Id.</u>).  Thus, the ALJ did consider Eaton's impairments in combination.

To the extent Eaton argues that the ALJ erred in his assessment that psychological problems were not severe, the Court finds the ALJ committed no error.  The ALJ relied on the

8

State agency phyisicians' opinions which said that Eaton's anxiety is not severe and only causes mild limitations (Id.).  The ALJ is the finder of fact.  42 U.S.C. § 405(b)(1); and Jens v. Barnhart, 347 F.3d 209, 212 (7th Cir. 2003).  Thus, what weight the ALJ decided to give to the evidence is within the ambit of the his decision.  If the ALJ had failed to consider the opinion of a treating physician regarding psychological problems, then the Court could examine whether he appropriately did not give that doctor's opinion controlling weight.  This Court does not find an opinion from a treating physician to indicate the contrary.  Therefore, this Court will not accept Eaton's invitation to assign more weight to the consulting physicians opinions because this Court cannot re-weigh evidence.  Haynes, 416 F.3d at 626.

Eaton further contends that in his determination that her problems with memory were not severe, the ALJ impermissibly played doctor by improperly substituting his own judgment for Dr. Heroldt's interpretation of her test results.  The ALJ said,

> although Dr. Heroldt described the claimant's memory as below average, she was able to recall seven numbers forward and three numbers backward and could recall three out of four words after five minutes.  She also could perform all but one mathematical calculation and completed serial sevens with only one error.

By using the same test results to draw a different conlcusion, Eaton claims that the ALJ impermissibly played doctor with Dr. Heroldt's report.

The Seventh Circuit has cautioned ALJs against substituting their own judgment for that of a doctor.  Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990).  However, the Seventh Circuit has also noted that the cases which are remanded for playing doctor are those in which the ALJ fails to address relevant evidence.  Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir.

2001).  Playing doctor is often problematic with treating physicians because they are entitled to controlling weight absent a sufficient justification from the ALJ to discount their opinions.  See, e.g., Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000). Thus, when an ALJ plays doctor with a treating physician's opinion and has no reasons for denying controlling weight, a remand is warranted.  Id.  However, the ALJ is not required to accept all conclusions reached by physicians, but must evaluate the evidence presented and "minimally articulate" why evidence supporting the plaintiff's claims are not sufficiently persuasive.  Id.

Dr. Heroldt is not a treating physician because he only saw Eaton once.  See White v. Barnhart, 415 F.3d 654, 658 (7th Cir. 2005).  Because he was not a treating physician, Dr. Heroldt's opinion is not entitled to controlling weight, and it is just another piece of evidence for the ALJ to weigh. See Haynes, 416 F.3d at 631.  Therefore, the only way the ALJ could impermissibly play doctor so as to warrant a remand is if he failed to address relevant evidence regarding Eaton's psychological impairments.  See Dixon, 270 F.3d at 1177.

In this case, the ALJ did not fail to address relevant evidence regarding Eaton's psychological impairments.  The ALJ specifically referred to the State agency physicians' opinions that Eaton's psychological problems would only cause mild limitations, and to Dr. Gilbert's progress notes that mention, once, Eaton's infrequent panic attacks (Tr. 13).  The ALJ directly addressed Dr. Heroldt's tests and determined that there was no other evidence that Eaton's psychological problems caused significant limitations.  The ALJ gave his own interpretations of the results of Dr. Heroldt's tests and supported that assessment with other evidence.  The ALJ did not fail to address relevant evidence, and as a consequence, the ALJ did

10

not impermissibly play doctor.[4]

The ALJ correctly assessed the severity of Eaton's problems with focus, memory, and concentration. Also, he did not impermissibly play doctor in his assessment of Dr. Heroldt's opinion. Thus, the ALJ properly found some of Eaton's impairments to not be severe and considered Ms. Eaton's impairments in combination in determining Eaton's RFC.

### 2. The ALJ's determination that Dr. Posar's opinion should not get controlling weight is supported by substantial evidence.

Eaton contends that the ALJ erred by not assigning controlling weight to the opinions of her treating physician, Dr. Posar. An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006). "This rule . . . seems to take back with one hand what it gives with the other, and as a result to provide little in the way of guidance to either." Id. More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); Clifford, 227 F.3d at 870. However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled. Dixon, 270 F.3d at 1177. Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Clifford, 227 F.3d at 870. However, the ALJ must avoid substituting his own opinion for that of the treating physician without relying on medical evidence or authority in the record. 20 C.F.R. § 404.1527(d)(2);

---

[4] Eaton also argues that the ALJ failed to consider her headaches and stress. However, the ALJ specifically mentioned the frequency of Ms. Eaton's headaches in his determination of her RFC, stating that she gets headaches three to four times a month caused by fibromyalgia (Tr. 14). The ALJ discusses fibromyalgia in his assessment of Ms. Eaton's RFC (Tr. 14-15). Consequently, this argument is also without merit.

11

Clifford, 227 F.3d at 870; Rohan v. Chater, 98 F.3d 966, 968 (7th Cir. 1996).  When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh.  Hofslien, 439 F.3d.at 377 (citations omitted).  Unfortunately, there is no bright line for when a physician's opinion is inconsistent with other substantial evidence in the record, and it is essentially a case by case determination depending on the circumstances.  Id.

In the present case, the ALJ was faced with conflicting medical evidence from Dr. Posar, Eaton's treating physician, and the State agency physicians.  The ALJ explained that Dr. Posar's opinion was inconsistent with the State agency physicians' opinions (Tr. 16).  The ALJ gave greater weight to the State agency physicians' opinion than to Dr. Posar's opinion (Id.).  The ALJ also indicated that Dr. Posar's opinion was conclusory and based on Eaton's own statements about the limits of her abilities rather than relevant medical evidence (Id.).  In summary, the ALJ gave two reasons for not giving controlling weight to Dr. Posar's opinion: (1) his opinion is inconsistent with other doctor's opinions, and (2) his opinion is internally inconsistent because it is a conclusory statement (Tr. 16).  See Clifford, 227 F.3d at 870.

Eaton contends that the ALJ's opinion is not supported by substantial evidence and exhibits deep logical flaws. The Clifford court stated that a treating physician's opinion can be discounted if it is internally inconsistent or inconsistent with other medical evidence.  See Id.  Here, the ALJ made both findings.  Dr. Posar opined that Eaton was unable to work at all without citing to any medical evidence, while the State agency physicians concluded that Eaton could perform at a light exertional level based on Dr. Zeitoun's findings.  As the opinions are different, this Court can only say the ALJ's a decision that Dr. Posar's opinion was not

12

consistent with other evidence on the record was reasonable.

The ALJ also said that Dr. Posar's opinion was internally inconsistent, stating, "Dr. Posar's opinion is simply a conclusory statement that the claimant cannot work at all, which appears to be based on the claimant's multiple pain complaints and subjective reports of extreme functional limits rather than relevant clinical findings." (Tr. 16). The record supports the ALJ's conclusion. Eaton saw Dr. Posar for an initial visit on August 18, 2004 (Tr. 333), and less than a year later, on July 28, 2005, Dr. Posar opined that Eaton was no longer able to work (Tr. 371). Dr. Posar gave this opinion based on Eaton's statements before he had even ordered an MRI (Tr. 327). At no point in Dr. Posar's record does he prvide reasoning to support his conclusion that Eaton could not work. Consequently, the ALJ's finding that Dr. Posar's opinion was conclusory was reasonable. Having found that the ALJ's finding that Dr. Posar's opinion was inconsistent with other doctors' opinions and internally inconsistent, the ALJ was entitled to not award Dr. Posar's opinion controlling weight. He provided an adequate analytical bridge supported by reasonable conclusions.[5]

In summary, the ALJ's determination to not give controlling weight to Dr. Posar's opinion is supported by substantial evidence because the ALJ adequately articulated that Dr. Posar's opinion was both internally inconsistent and inconsistent with other doctors' opinions. Furthermore, his findings were reasonable. The ALJ's determination to not give controlling

---

[5]Eaton also argues that the consultative examiners, Dr. Zeitoun and Dr. Heroldt, should have filled out the RFC assessment or medical source statement (MSS), and that failure to do so constitutes harmful error. However, 20 C.F.R. § 404.1519n, states, "Although we will ordinarily request, as part of the consultative examination process, a medical source statement about what you can still do despite your impairment(s), the absence of such a statement in a consultative examination report will not make the report incomplete." Thus, the ALJ had discretion to seek an RFC or MSS.

weight to Dr. Posar's opinion is supported by substantial evidence

### 3. The ALJ's evaluation of Eaton's credibility was supported by substantial evidence.

Because an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. Jens, 347 F.3d at 213. "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted). Social Security Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding. Golembiewski, 322 F.3d at 915; Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). An ALJ cannot simply state that an individual's allegations are not credible. Golembiewski, 322 F.3d at 915. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski v Halter, 245 F.3d 881, 887 (7th Cir. 2001). When an ALJ's determinations are based on objective factors rather than subjective considerations, such as the claimant's demeanor, there is greater freedom to review the ALJ's decision. Clifford, 227 F.3d at 872. However, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (quoting Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)).

Eaton's main claim is she suffers from severe pain. She has stated that she cannot stand or sit for more than ten or fifteen minutes because of pain in her legs and back (Tr. 448). Severe pain can be totally disabling. See eg. Carradine v. Barnhart, 360 F.3d 751, 754 (7th Cir. 2004);

Zurawski, 245 F.3d at 889.  Where the medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations. Zurawski, 245 F.3d at 887-88.  If an ALJ finds that an allegation of pain is not supported by the objective medical evidence in the record, and if the claimant still indicates that pain is a significant factor of his or her alleged disability, then the ALJ must obtain detailed description of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant.  Zurawski, 245 F.3d at 887.  Carradine further cautions that an ALJ's credibility determination must be based on more than the complainant's daily activities.  360 F.3d at 755-56.

   The ALJ found Eaton's claims of pain and impairments to be supported by medical evidence (Tr.16).  However, the ALJ indicated that there were inconsistencies in her testimony regarding the intensity, persistence and limiting effects of her symptoms (Tr. 16).  The ALJ noted that despite her pain, Eaton helps her children get ready for school, does regular household chores including cooking and cleaning, and shops for groceries on a daily basis (Tr. 16).  The ALJ also noted that after having surgery on her shoulder Eaton continued to work for several years without any significant increase in pain (Tr. 17).  Finally, the ALJ noted that Eaton stated that she quit working because her ex-husband's mother was the owner of the franchise (Id.).

   In the present case, the ALJ did as Carradine directs and based his credibility determination on more than Eaton's statements about her daily activities.   The ALJ articulated that not only did her daily activities suggest she was not credible, but also pointed to the fact that Eaton worked for several years despite having a chronic pain condition.  He also pointed to her statement concerning her ex-husband's mother, which suggested ulterior motives for leaving

15

work.  The ALJ also pointed out that there was no medical evidence to support Eaton's claims of panic attacks, or that she elevated her legs for much of the day.  The ALJ's determination does not contain any deep logical error, as Eaton argues, and is not patently wrong because the ALJ provided a logical bridge from the evidence to his determination.  Simply put, the ALJ's determination must be upheld because he articulated sufficient reasons for finding Eaton not credible to meet the bridge.

        4.    <u>The ALJ correctly decided that Eaton can perform her past work  at a light exertional level due to her RFC.</u>

In step four of the ALJ's analysis, he must determine if the claimant still has an RFC that permits her to perform her past relevant work.  20 C.F.R. § 404.1520(e).  In determining if the claimant can perform her past relevant work, the ALJ must compare the demands of the work with her present capacities.  <u>Strittmatter v. Schweiker</u>, 729 F.2d 507, 509 (7th Cir. 1984).  In step five, if the claimant cannot perform her past relevant work, then the ALJ must determine if she can perform other work in society.  20 C.F.R. § 404.1520(g).

At a hearing on February 10, 2006, a vocational expert testified regarding the possibility of someone with Eaton's RFC performing work similar to that performed by Eaton (Tr. 458-59). The vocational expert testified that Eaton performed her job at a medium exertional level(Tr. 458). He also testified that someone with a ninth grade education and Eaton's work history and physical limitations would be capable of working as a restaurant manager at a light exertional level, as the job is typically performed, but not as Eaton performed it (<u>Id.</u>).  Based on the vocational expert's testimony, the ALJ did not find that Eaton could perform her past relevant work as she actually performed it under step four, but rather, that she could perform the work as

16

it is typically performed under step five (Tr. 17).

Eaton argues that the ALJ incorrectly found that she could perform her past relevant work because he failed to consider many of her impairments in assessing her RFC.  But the basis for her impairments come from her or her doctor.  This Court has already found that the ALJ did not err in assessing Eaton's credibility or the weight of Dr. Posar's opinion.  Whatever weight the ALJ gave to other evidence was his discretion.  Jens, 347 F.3d at 212.  This Court will not re-weigh factual determinations.  As discussed above, the ALJ did not err in the consideration of Eaton's impairments, and thus, did not err in the assessment of her RFC.  As a consequence, he did not err in his framing of the hypothetical he posed to the vocational expert by including Eaton's RFC as the ALJ assessed it.  The ALJ determined that Eaton could not perform her past relevant work under step four of his analysis, but did determine that she could perform work at a light exertional level that exists in society under step five.  The ALJ based his determination on the testimony of the vocational expert, which was reasonable.  Thus, the ALJ's determination is supported by substantial evidence.  As a result, the ALJ's decision is entitled to deference.

### III.    CONCLUSION

Because the March 19, 2007, letter from Dr. Posar is not material, Eaton's motion for a remand under Sentence 6 of 42 U.S.C. § 405(g) is **DENIED** [Doc. No. 19].  Also, because the ALJ's determinations that Eaton's impairments were not severe, that Dr. Posar's opinion should not receive controlling weight, that Eaton was not credible, and that she could perform work that exists in society, were supported by substantial evidence, this Court **DENIES** Eaton's request [Doc. No. 16] and the ALJ's decision is **AFFIRMED**.  The clerk is instructed to term the case.

17

**SO ORDERED.**

Dated this 16th <sup>TH</sup> Day of June, 2008.

                                                S/Christopher A. Nuechterlein
                                                Christopher A. Nuechterlein
                                                United States Magistrate Judge